Let's try to get the seating right on this next case. The next case for argument is 18-11-32, Uniloc v. ADP. So far, the case has not been heard.     All right, Mr. Foster, whenever you're ready. Thank you, Your Honor. Please, the court. There's a lot going on in these cases. So, but we've got, in addition to all of the patents and it's involved in the underlying merits case, we've got this separate standing issue. So, we don't want to spend all day here. I'll ask you to spend maybe two minutes of your time, the outset on the standing question, the constitutional standing question. Yes, Your Honor. I'll start wherever you want. Yeah. The standing question we did, if you'd like, did submit a brief last week. And I'll respond to any specific questions. Okay, well, one of the specific questions I have is just to make sure, because we've got a lot of people involved in this case. Does your position on this agreement rest on the fact that I'm looking at Section 2.1 at the end of that, that the third parties here under Section E are really the same as the indemnity? That it doesn't, I think, as I understand the other side's argument, they think this third party's reference to E is everybody else in the world. And your position is that no, it is only connected to the indemnity. So, you can answer whether I've got this issue correct or not. The short answer is yes. Your Honor will note the contractual argument 2.1E you referred to uses the phrase third party. The third party phrase appears in Section 4 as well, dealing with indemnification. That's a contractual argument. We're an appellate court. I don't know how you're going to deal with that, but yes, it is our position on the legal thing. We also have a factual issue. We don't think there was an indemnification obligation, and that will be tried in the district court in East Texas at some point. What about Unilock 2017 LLC? If I think that they are necessary in order for you to proceed, because if I don't believe that substantially all rights were transferred, what do we do about that? Do we order, I mean, there's a federal rule that says you're supposed to make a motion for it, and you didn't make one. But then you said this declaration says the company president says if we have to be added, we would consent to be added. But you didn't file a motion to add them, so I'm not sure what to do. Yeah, I wasn't sure what to do either, Your Honor, when this issue came up in several cases. In the district court, there's a Rule 25C. But there's a FRAP rule, too. I didn't see it, but 25C said you don't have to move.  FRAP Rule 43. Excuse me? Okay, Your Honor. It says you have to move. You didn't move. So you're going to do that after court today? Maybe issue a short case paper? You want to do it orally right now? I can move right now, Your Honor. Okay, I consider that a motion that was made, and we'll take it under advisement. So you're moving, just to be clear, that Unilock 2017 LLC be joined to this appeal if necessary. Yes, Your Honor. That's in a footnote in our brief, saying that since I also represent Unilock 2017 on their behalf, Unilock 2017 would consent to being added if the court wanted. Okay. Merits. Do you want to move on to the merits now? Yes. Okay. Starting with the merits. IBM was a big factor in the industry in 1998. They came up with a new way to redesign the networks in large companies where individual users would move to various, they're called clients, client stations. And you might have different users working from any particular client station. There were a lot of problems involved in that kind of situation. IBM had new ways to do it. They filed a bunch of patent applications in December 14, 1998, outlining their new ideas, and they ultimately got patents issued on them. This was a pleadings motion, so it's based primarily on what's in the patent. And the patents laid out problems with prior art, how what IBM was doing was different from that, and what the claims are and what the differences were. Why don't we jump to the 446 patent? What does the district court say the abstract idea was in that one? Let me turn my notes in the 446 around. Don't confuse someone else. Sorry. Well, we laid this out in our. I just asked you to tell me what did the district court hold was the abstract idea for claim one of the 466 patent? It didn't define the abstract idea. No, I thought it did. I thought it did on page 838 of the appendix where it said, quote, providing a user-specific desktop interface that includes establishing display regions associated with application programs for which the user is authorized and in response to the user selection. I'm going to start laughing because I have to probably take three breaths to get all of this out, and I'm not certain how providing a user-specific desktop interface could possibly be an abstract idea. This is a friendly question, if you're not understanding. Thank you for honor. And I was trying to be kind to the district court when our brief we said that. I didn't get anywhere near the end of what the district court said was the abstract idea. I got to about halfway. We did make that point. This is an over review, so I don't want to pick on the district court. But, yeah, that doesn't sound like an abstract idea to me at all. And we did say that our brief part of the issues we have heard. So I'm trying on oral argument to focus on what the invention is and what was claimed and not pick apart what the district court did. But we did lay those things out in our brief. If I might, in preparing for this argument, I reviewed all of the Federal Circuit opinions since the Alice case in which there was a holding that a claim was drawn to an abstract idea. There are 34 of them, and 23 of them deal with the selecting, analyzing, reporting, and displaying information, which obviously doesn't apply here. Eight of them are cases where the inventor simply put on a computer what had been done by human beings. That doesn't apply here. And there were three oddballs that didn't fall into those baskets in dealing with the rules of card games and one which talked about mental idea. So when you're a company like IBM and you come up with, redesign a network and design claims that are drawn to it. Okay, can I just interrupt just because we're running out of time? Sure. And I'm having, I mean, I think there's daylight between the individual claims here and different arguments to be made and they fall in different categories. So let's turn to the 293 if you don't mind. 293, sure. It seems to me that the only purported invention, so tell me if I'm missing stuff here, is using the file packet and the segment. You got it, Your Honor. And as far as I can tell, reading the spec, I mean, there's a lot of stuff in the spec about prior and what's the invention, but these were already known in the art, right? The file packet and the segment configured. Respectfully, Your Honor, file packet is a term which wasn't a prior art. Which was? Well, file packet just means a file. But this was different than what we're doing in the art because this had program in it to configure the application so it could be activated from a central location in the network. At least that's the way it was described in the patent. In what sense is either the network or any of the client specified in Claim 1 of the 293 patent performing a different function in the sense of the EnFISH case, for example? My understanding, and I'm not a computer scientist, is that they put programming in the file packet to configure the network so that it could be a single application. You could access the application from the target. From the user could access it through the target server. But the server is doing what servers do. The computer is doing what computers do. Servers do what servers do, Your Honor. And the network is doing what networks do. The only difference is. The programming. Is the programming. Absolutely. Yeah, and. Does the programming in this case improve the functioning of the network? Yeah, that's exactly it, Your Honor. Because we've held that when innovation like this improves the functioning of the computer, for example, like EnFISH, where the particular data platform, I can't remember the specific details, but I do remember there were assertions in the specification that it reduced memory allocation, sped up processing, things like that. So how does this improve the network? And where, if anywhere, in the 293 patent does it say that? Where does it articulate the improvements? What it says in the record, Your Honor, is that now you can control us all from one location. I recall that as being the advantage that's satisfied by the 293 patent. But that's part of the abstract idea, right? I'm focusing on the claims now. We'll go to the spec later. But there's nothing in the claim language that seems to say that. And certainly our cases say if you've got an abstract idea, the inventive concept is not drawn to, well, this is the first time we've done it in this particular case. So tell me in the claims, responding still to Judge Moore's question, because I'm just trying to understand your answer. You're talking about still the 293, right? Yes. Okay, I just turned the claim language on to claim one. The paragraph that begins, preparing a file packet is what was added during the prosecution history to distinguish it from prior art. Right, but the file packet, at least it's in the art. It's in the art, right? Well, it's a file, yes, but it's the following language, including a segment configured to initiate registration operations for the application program with a target on demand server. What the patent says is that is not how the prior art did it. This was added during the prosecution history, and the examiner couldn't find that in the prior art, and he allowed the claims to issue. So is there anything in the specification that discusses any technical improvements about file packets, how they're created, how they're sent, or they're received? Because I couldn't find anything. Can you point to us? I hate to sound unprepared, Your Honor, but that's the kind of thing I would sit down and look over to answer, not knowing in advance you'd be asking about this aspect of the 293 patent. I will point out, though, that this was the provision which was added during the file history, and it was discussed back and forth as to why it provided advantages over the art. I'm sorry, I didn't hear your last phrase. It was discussed with the examiner how this provision, which was added during the file history, differentiated the IBM way from the way the prior art did it. I'm sorry, Judge Moore? Well, let me see if I can help you with the 293, or at least tell you what I understood the nature of its invention to be. And you can correct me or you can continue to say that you're just not prepared to answer. Whatever is fine. But I didn't think this was about file packets or a patent that was claiming novelty in file packets. I thought it was about what file packets allow the network to do, how the network can operate more efficiently by virtue of these file packets, how the applications get updated centrally because of them, and it allows users to access the applications from any client as a result of all this. So it's not that the individual components were necessarily not conventional, but their use put together in a different way afforded significant network improvements and increases. That's what I understood the fact. You said it much more elegantly and accurately than I could have, Your Honor. Thank you. Can you, you want to point us to something in the specification that does that? I'm sorry, I can't hear you, Your Honor. I mean, the district court said, and I don't know if he had a cite to the specification, he concluded that the packets include a segment configured to initiate registration operations that is regularly, quote, activity of commercial network management software, as described in the specification itself. So do you have a cite for the specification? Not on the fly, Your Honor. I can't do that. I'm sorry. Can you turn to the 466 patent? Sure. And tell me what is the improvement represented by the method of claim one? What is the improved functioning or the improvement that would avoid this being considered simply an abstract idea?  The language I use is claimed advance because that seems to be the language the server is now picking up to define what something is directed to. The claimed advance of the 466 patent, there were several aspects to the IBM way. One was to, of course, you start with an application on a server in the network, but the idea was to provide mobility to users by a user now logs into a terminal, wherever it is, and then the server sends a desktop, a desktop interface unique to that user, and on the desktop interface will be icons for the applications to which that user has authorization. The user then selects the app, and then the application is sent, is not executed on the server, but is sent down to the client for execution. Those instances are all in the claims. That was not the way the prior art did it, and the advantages were defined in the 466 patent as providing mobility to this intercorporate system. Well, it sounds like something that computers regularly do, that computers regularly interact with the user sitting at the client and provide the associated set of application programs. That's just what everybody does every day sitting in front of a computer. Every day in 2019. I thought just to amend Judge Lynn's point, I thought you said and you conceded, I don't want to call it a concession, in Gray that it was conventional for client work stations to be connected to servers over a network, installing, distributing, receiving, and providing programs over a network represented standard computer functionality. I'm quoting from your Gray brief. Yes, Your Honor, but in 1999, although servers were connected to users, it didn't work out this way. It was not a situation then where you had a user go to any terminal and get an interface where his authorized applications were displayed. People forget that. That's why you have to look at the record here. Doesn't the patent actually expressly say it? Why don't you pull out the 466 patent? You have it? Yeah, I do. I'm going to help you. I wish you were doing it, but. I have it, Your Honor. What about, let's see. In column one, lines 43 to 56, do you lay out there the problems with the network architecture as it existed in 1999 that this patent is going to solve? Yes, Your Honor. And then on column 16, starting at line 60, do you then explain how this patent solves those problems? Okay. I mean, I think it's in many places probably, but those were the first two that jumped to mind to me. I'm sorry. You were referring to column 16? Mm-hmm. I'd also refer the court in the chapter and verse. We tried to set this forth in our briefing as to specific columns and lines where the advantages of each patent were set forth. But you're right, I can't do that on the fly. Thank you, Your Honor. Um, why don't we reserve some time for rebuttal. Why don't we go for rebuttal. Meng Shi. Thank you. Meng Shi with Sussman Godfrey on behalf of Apelli, the Defender Incorporated. I'm here to address three points today, the standing issue, the 466 patent, and the 766 patent. On the standing issue, just very quickly. And just to be clear, so are you just doing standing or are you here to respond to the 101 issues? 101 issues as well, but for two out of the four patents. Okay, tell us which two so we'll know what to ask you and what to ask your friends. Yes, the 466 and the 766. Okay, all right. Why don't you spend a minute or so on the standing question, maybe just on the points we talked about. Yes, we object to their motion to join Unilog 2017 LLC as an indispensable party. We actually disagree that this is a prudential standing issue at all. It would not be proper to substitute 2017 LLC now because we haven't even seen the assignment agreement from Unilog Luxembourg, Unilog USA, or to Unilog 2017 LLC. We can ascertain that it is in fact an assignment where Unilog 2017 LLC is standing in the shoes of Unilog Luxembourg or USA and would be a tremendous prejudice to appellees for the court to grant this motion. So at the very least, I would request supplemental briefing on this PrEP 43 motion that they are making today. But are you also in the alternative making the argument that we should just, is there a basis for our just rejecting the motion wholesale as opposed to? Absolutely. We actually think that there is at least a prudential standing defect here, but more importantly, there is a constitutional standing defect. The prudential standing is only an independent reason to conclude that, you know, the court should dismiss this appeal. And the constitutional point is that Unilog lost its constitutional standing when on March 13, 2018, IBM regained the reversionary right to license the patents at issue to the appellees. And this is a holding that would be compelled by the court's cases in YAV versus Motorola, Luminera versus Lyon, and ePlay versus Bebop. But can I just ask you what I asked your friend on the other side, which is, is your argument, the factual component of your argument, well, it's not factual, it's construing the contract, but insofar as the contract, does your argument rest on our concluding that Section 2.1.E and the reference to third parties is a broader category than just the indemnity referenced in that same 2.1.E section? Yes, that's one of the factual issues that we would want the court to decide right now, but we don't really think that… It's kind of fact law because we're construing a contract, but never mind. Yes, that's true. It's, yes, a legal issue. We don't really think that there's a factual dispute as to that. Actually, when Unilog submitted the Echigoen Declaration, it was improper for the court to consider the party's intent. It's parole evidence, and under New York law, which is what the contract should be construed, the court should not be considering parole evidence to create an ambiguity where there is none, and especially where Unilog has not contended that there is an ambiguity in the contract. And on the factual issue, parole evidence aside, we think that it's clear on the face of the contract that third parties and indemnities refer not to the same thing. Third parties under 2.1 is very broad and can include any party that's involved in any activities that's relating to the defense enforcement or licensing under any of these IBM patents by Unilog. The term indemnity under section 2.1, which is the same provision, refers only to IBM subsidiaries or licensees who were sued by Unilog knowing that such a party had been an IBM licensee. The use of these very different terms in a single contract and actually in this single provision 2.1 here means that the terms are to be accorded very different meanings, and that's standard contract interpretation law. Okay, turning to the 466 patent, which we've already kind of covered with your friend, is this the one where the district court defined the abstract idea in kind of an overwhelming way? So what do we do with that? I think you should read that as the abstract idea. So the district court actually, we counted the words and there's 45 words in the formulation of the abstract idea, and we believe that... It's not a helpful statement by you. I don't understand. In other words, the district court went very narrow... I mean, not helpful to your case is all I mean. I don't understand how an abstract idea could begin with providing a user-specific desktop interface. What about that sounds abstract? A user desktop interface and the provision there... User-specific. User-specific, yes. Well, most desktop interfaces would be user-specific since it would be queued to the user unless it didn't have the icons for the downloading of the application. But our position is the district court went very narrow and into the minutiae in formulating this abstract idea and still found that patent ineligible. And under the court's precedent in Apple versus Amaranth, trading tax, these kinds of interfaces, which, by the way, this patent... Yes, because if you go into the minutiae and you don't actually look at an abstract idea, it makes it much easier to survive step two, right? Because we've held that the thing that's not conventional, well-understood, or routine can't be the abstract idea. That can't be what saves your claim. So if the district court basically articulates all the elements of the claim as the abstract idea, you've eliminated step two of Alice. So I don't think going to this level of minutiae... First off, I don't think this articulates an abstract idea. For you to prevail, you've got to tell me an actual abstract idea because nothing about this seems abstract to me. We think that providing a user-specific desktop interface for the management of or in distribution of applications would be the abstract idea in the alternative. But we do not think that the district court is wrong in formulating a more specific version of the abstract idea. On the issue of advantages regarding network architecture, we believe that all these technological advantages have been imported from the spec, and what the court should really do is look at the claims to find out that these are not technical improvements at all to the prior art. The claimed advance under Affinity Labs is just another way of understanding what a technical improvement is. But a desktop interface unique to user icons for selection, selecting those icons and then sending an application to the client for execution, that is like Judge Lin stated before. Computers regularly do this in 2019 and back in 1998 as well. And as Judge Moore pointed out in gray, appellants actually conceded this. Installing, distributing, maintaining, downloading, these are all broad categories. And we believe that on the routine and conventional point, appellants have waived that argument because it was not really, it was not raised below. And in any event, in terms of the specification and what's in the specification, there's mentioning of the Tivoli system, the Microsoft Xen system, all of these systems were able to have this method. When you say just, when you say it was not raised below, are we looking at, there's just too many papers associated with this case, but are we looking at, I don't even have it in front of me. It was an opposition file to the motion to dismiss. So when you're saying it was waived, you're saying that that would have been their opportunity to raise it. Yes, absolutely. And they would not be able to point that out to you. You're not talking about the complaint or anything like that. You're talking about the opposition to the motion. Yes, yes, the briefing. Any lack of evidence was really Unilog's own doing. The evidence regarding what was not considered a well-understood routine or conventional was never before the district court, who was only presented with the patent, the very limited allegations in the complaints, and Unilog's arguments. And the specification does not state that the claimed method is not well-understood routine or conventional in 1998. Who has the obligation or the burden to establish in this case? To establish 101 eligibility? Sure. That would be the appellants. You think the appellants have the burden at the district court to prove that their patent is eligible? That their patent is not ineligible. You think they have the burden of proving their patent is not ineligible? Absolutely, upon the motion by the defendants. What am I missing? A challenge to validity is the burden of persuasion is always upon... The burden of persuasion rests with, yes, us, but the evidentiary burden rests with them. Why? I think that's what Alice says. Did you produce evidence that all of the elements were conventional? This is on the pleadings. No, no. This is on the pleadings, so there's no evidence. So this is on the pleadings, and you're saying they have the burden of proving their patent claims are eligible, and if they didn't do that, they've waived it and you should win. No, they did not submit the evidence or any kind of factual dispute regarding what was well-known, understood, or conventional back in 1998. So we didn't even have a chance to rebut what would have been that evidence. They didn't put forward the evidence at all. I don't understand. 101's an affirmative defense in this case, correct? Yes. But you still think they have the burden? On this issue, yes. Okay. But this issue not being the entire eligibility of 101 on the questions regarding whether or not when they're referring to a computer that it was something other than the team's invention. So I understand this, because this is just blowing my mind. I've never heard anyone say this before. So just make sure I understand this. The Supreme Court articulated a two-part test that must be proven to find claims ineligible, and you're saying your burden is only part one, and if you meet part one, you win, unless they disprove part two. Well, they're supposed to come back with evidence that contradicts that. Billy, you don't have a burden of proving it is well-understood, routine, and conventional? They have a burden of proving it's not? They have to raise it as an issue of fact, and it was not disputed below. This is at the pleading stage. Yes. They literally can't put in evidence. They should have well-pleaded allegations in the complaint about what was not well-understood, routine, or conventional, or the fact that their invention was not well-understood, routine, or conventional. Well, maybe they have some obligation to raise a question of fact, but the burden has to be on the party challenging the validity of the patent. Yes, the burden is on us to bring the Rule 12 motion in order to defeat patent eligibility. I do not disagree with that. Maybe I did not make myself clear earlier. Okay. Let's move to the other side, the other counsel. Thank you, Your Honors. May I please the court? I'd be happy to address your questions about the 293, specifically with regard to the segment configured to initiate. Your Honors, I think it's important to understand that the 293 is describing technology that existed before. The segment initiated to configure is a portion of the file packet. A file packet, as my friend here acknowledged, is just the way that network computers talk to each other. The segment configured to initiate is a portion of a file packet. Now, the claim is not directed to an improved file packet, to an improved segment to configure. But it is directed to a way of improving the operation of a networked arrangement. Is it not? It is, Your Honor, but the mechanism for doing that, this file packet, is simply a standard mechanism for a network server to communicate with a client. And the segment configured is specifically identified in the specification as including an import data file and a call to an import program. These are standard mechanisms that can be programmed in Java that were known at the time. And so what was happening here was simply a rearranging of the responsibilities within the network. No, but isn't that the point? File packet may have been a conventional thing, but the specific way in which these things are arranged and how they function provides improved functionality of the whole network arrangement. Well, I don't, Your Honor, respectfully, I don't believe that it improves, it grants a technological benefit. There is some business benefit to be gleaned, and this is what the district court acknowledged, that the system administrator doesn't need to visit with each and every user to say, how would you like this configured? And by the way, I'm going to impose these restrictions on the system. But the way the system is working is the same as it's always worked. The server is sending file packets to the client. The client is sending information back. That's all that's happening. The fact that the file packet includes a segment configured to initiate registration, all that's saying is there's some splash page that's going to appear on the server for the user to log in. But that's not changing the functionality of the network in a technological way. That's only improving the business efficiency in the sense that maybe there's less manpower that's required. But that's why this particular patent is very clearly directed to an abstract idea that's not saved by any sort of technological advance in the specific claims. And the claims are quite broad, right? The claims are incredibly broad, Your Honor. All right, and what was the other patent you were going to talk about? Your Honor, the other patent is the 578. OK. Your Honors, with regard to the 578, the 578 is directed to two-tier customization. I believe the district court correctly identified this patent as being essentially an automation of the customization process that existed in the prior art. The computer network is being used as a tool here. And the specific elements of the claims are all very general functions that are within the purview of any generic computer hardware. You've got a mechanism for installing an application program, obtaining configurable preferences, and executing an application. The patent itself. But again, you're parsing the claim and then talking about individual parts of the claim. But it's the overall combination that presents a new and arguably improved functionality of the network. Isn't that right? Well, Your Honor, again, I would respectfully disagree, in part because when you look at the claim, claim one, in particular, just refers to an application launcher program. There is, in claim two, the additional element of a configuration management program. These are the two kind of hooks, I think, that Unilock is relying on. If you look at the specification, the specification makes clear that the application launcher program can be anything from a URL all the way to the application itself, the entire application. Similarly, the configuration management program can be almost anything. It can be as little as a configuration screen. And I have specification sites for these facts if you're interested, Your Honor. It can be a configuration screen or it can be an entire module that gets passed down. So I think the very breadth of options available to satisfy this claim establish that there is nothing here that's a technological advance. It's basically saying, you can customize this type of operation between a network server and a network client by doing it at the server side. You can do it at the client side. You can do it however you want. And all it's doing is using the network as a tool to affect that customization process so that what the user sees and what the network administrator sends to the user are what they should be. OK, so in this patent, in column five, can you please turn to line 65? I'm sorry. This is the 578, Your Honor? The 578 patent. This is appendix page 65. OK. So where it says, accordingly, the present invention provides for management of configuration application programs in a network environment from a central on-demand server location while allowing for user preferences. The next sentence says, this provides for reduced cost and increased uniformity in managing software in a network environment by delivering configured applications when demanded by the user. It further provides an essentially hardware transparent ability. How are these not improvements to the network? Your Honor, again, these are improvements to the way that the network is managed by the people, by the network administrator. The network administrator's interaction with the end user is definitely- No, you've changed the way the network delivers information to make it more efficient for the end user, but it was a change to the network, wasn't it? I don't believe so, Your Honor, because- Is it a change to the human beings? It's a change to the way that the human beings are interacting, certainly, Your Honor. No, really? Because I understood this to be a claim to a network and the software on a network, not a claim to human interactions. You're right, Your Honor. I apologize if I mischaracterized the claim. The point is that there is no change to the way that the network is functioning. There is only a change to the way the information is being exchanged. No, the way the information is being exchanged is permitted or established by the way the network is configured. Well, Your Honor- The network works better and provides the ability to have this improved functionality because of the way it's configured, correct? Well, the improved functionality, Your Honor, is really related to the ability of the network administrator to administer the network, not to how the network itself is presenting applications to the user, because the network administrator could individually set up each user's computer, but this patent is directed to automation of that process. But what I'm getting at is all of these improvements are because of the way the network is configured, correct? Well, Your Honor, I'm not sure because the claim is so broadly drafted and includes these terms, which can basically encompass any aspect of the program. If it's not- If you're not sure, this is 12b6, the pleading stage. If you're not sure because claim construction hasn't occurred yet, why are we here on a 12b6? Well, Your Honor, there was a claim construction issue that was raised. There has been a claim construction order in this case. I know that it's not part of the record on this motion, but this is- That doesn't answer my question at all. My question is really clear. My question is you're standing here telling us you're not sure whether this claim covers improvements to the network, and I think inherent in your answer is your understanding that if that's the case, we're probably talking about eligible subject matter, and you're not sure because you're not positive what the claim scope is. That's what I understood you to be saying. Your Honor, I may have misspoken, if that was your impression. What I was trying to say is that the claim is drafted extremely broadly, and according to the specification, for example, the Application Launcher Program, which is a key element to Claim 1 of this patent, is in the specification. It's described. It can be basically anything. It can be a URL, or it can be the entire application. None of that is beyond a generic or conventional mechanism that already existed. The specification explicitly explains that this environment, this network management environment, they call it the Tivoli system, the TME, it allowed for network and server communication. This is affecting network and server communication either in the form of the entire application, a subset of the application, a subset of the configuration module. The claim scope is relevant only in the sense that it illustrates that this is an abstract idea that does not provide a technological advance. Thank you. I reserved two minutes when I filled out a form a couple weeks ago because I wanted to have the opportunity to let you ask me any questions. But the court has no questions. I will then summarize and rebuttal. I think it's important that if you write an opinion in this case, that you make clear that on the first step of ALICE, what you're looking for is the claimed advance. And if that's clear, I think it will help the profession a lot. Questions? Thank you.